764 N.E.2d 1153 (2002)
328 Ill. App.3d 103
262 Ill.Dec. 36
In re C.J., a Minor (The People of the State of Illinois, Petitioner-Appellee,
v.
C.J., Respondent-Appellant).
Nos. 1-99-1005, 1-99-1006.
Appellate Court of Illinois, First District, Sixth Division.
February 8, 2002.
*1154 Pamela Leeming, Assistant Public Defender, Public Defender of Cook County, Chicago, for Appellant.
Susan R. Schierl Sullivan, Assistant State's Attorney, State's Attorneys Office of Cook County, Chicago, for Appellee.
Justice BUCKLEY delivered the opinion of the court:
Respondent-appellant C.J., a minor, was adjudicated delinquent. He appeals, contending *1155 that the pretrial detention provision of the Juvenile Court Act of 1987 (the Act), (705 ILCS 405/5-501 (West 1998)), violates the United States and Illinois Constitutions. We affirm.

BACKGROUND
The minor's adjudication of delinquency arises from two separate cases. On November 16, 1998, when the minor was almost 16 years old, he was stopped by Chicago police officers. During a field interview, a clear plastic bag containing a yellow rock fell out of his mouth. Subsequently, he spit out three more such bags, all containing suspect cocaine, and was arrested. The next day, the State filed a petition for adjudication of wardship alleging possession of a controlled substance.
It is unclear whether the minor was ever detained on this charge. There is no such indication in the record. All that exists regarding this drug case is an order for temporary detention dated November 17, 1998, which states there is probable cause to believe the minor is delinquent but does not indicate the required "immediate and urgent necessity" to detain him. Moreover, no judge ever signed this order.
While his drug case was pending, the minor was again arrested on January 23, 1999. In response to shots fired at an apartment building, Chicago police officer Ted Davis patted down the minor and recovered a .38-caliber revolver. On January 25, 1999, the State filed a second petition for adjudication of wardship alleging unlawful use of a weapon and unlawful possession of a firearm.
A detention hearing on this weapons case was held that same day. The State asked to proceed against the minor by way of proffer pursuant to section 5-501 of the Act. The proffer included Officer Davis' testimony and police report, signed by two other officers and their sergeant. The minor objected and asked the court for leave to file a motion declaring section 5-501 unconstitutional. The court granted leave and continued the constitutional challenge.
However, the detention hearing proceeded. First, based on the State's proffer, the court found probable cause to believe the minor was delinquent and in need of supervision. Second, based on the minor's juvenile record published at this hearing, the court found "immediate and urgent necessity" to detain him pursuant to section 5-501(2) (705 ILCS 405/5-501(2) (West 1998)). That record revealed that he had three referrals to juvenile court: two (the drug case of November 17, 1998, and a burglary case from December 4, 1998) were pending, and a third (an armed robbery on June 27, 1996) had already resulted in a finding of delinquency. The minor's record also showed various probation violations and arrest warrants.
However, the case was continued until the next day for the hearing on the minor's constitutional challenge to the Act. The parties appeared, but the matter was set for February 22, 1999, with a separate hearing on the constitutional claim to be held before that date. There is no indication in the record that a hearing on this claim took place.
At the adjudicatory hearing on February 22,1999, the court heard arguments on the minor's motion to quash arrest and suppress evidence on both his drug and weapons cases. The court denied the motion as to both cases and finally adjudged the minor delinquent. On March 8, 1999, the court entered a disposition of 30 days in the juvenile detention center, time considered served, and 5 years' probation.
The minor appeals his disposition. He contends that section 5-501 of the Act, which allows a juvenile court to order the *1156 pretrial detention of a minor based on the State's proffer, is unconstitutional in several respects. He argues that it violates the Illinois Constitution in that it denies juveniles the same procedural protections as adult criminals. He also maintains that it violates the fourth and sixth Amendments of the United States Constitution (U.S. Const., amends.IV, VI) in that it denies juveniles a preliminary hearing, the right to effective counsel and an adequate determination of probable cause.
We note that at oral argument before our court, the minor requested leave to file supplemental authority. We granted this request. The minor then cited Williams v. Kobel, 789 F.2d 463 (7th Cir.1986). While Williams stands for the proposition that there are two levels of probable cause in an adult criminal proceeding (Williams, 789 F.2d at 470 (the probable cause to bind adult over for trial in preliminary hearing is more stringent than the probable cause, necessary to arrest adult)), we do not believe, for the reasons set forth below, that this aids the minor in his cause.

ANALYSIS
This appeal challenges the constitutionality of a statute; therefore, it is subject to de novo review. See Miller v. Rosenberg, 196 Ill.2d 50, 57, 255 Ill.Dec. 464, 749 N.E.2d 946 (2001). However, a statute is presumed to be constitutional, and the burden lies with the party challenging it to clearly establish its constitutional invalidity. See Arangold Corp. v. Zehnder, 187 Ill.2d 341, 351, 240 Ill.Dec. 710, 718 N.E.2d 191 (1999); Russell v. Department of Natural Resources, 183 Ill.2d 434, 441, 233 Ill.Dec. 782, 701 N.E.2d 1056 (1998) (court must construe statute to affirm constitutionality if reasonably capable of such construction).
The Juvenile Justice Reform Provisions of 1998 (Pub. Act 90-590, eff. January 1, 1999) are a set of provisions that became effective on January 1, 1999, and changed several delinquency portions of the Juvenile Court Act of 1987. In the instant case, the minor makes both state and federal constitutional challenges to section 5-501 of the Juvenile Court Act as reformed by Public Act 90-590 that now permits pretrial detention of minors based on a proffer made at the detention or shelter care hearing. Specifically, the minor challenges this portion of the statute:
"At the appearance of the minor before the court at the detention or shelter care hearing, the court shall receive all relevant information and evidence, including affidavits concerning the allegations made in the petition. Evidence used by the court in its findings or stated in or offered in connection with this Section may be by way of proffer based on reliable information offered by the State or minor." (Emphasis added.) 705 ILCS 405/5-501 (West 1998).
We are confronted with two distinct cases on appeal: the minor's drug case and his weapons case. Because different facts are involved, we address each separately.

A. The Drug Case
As a threshold matter, the instant facts indicate that the minor does not have standing to constitutionally challenge section 5-501 as it relates to his drug case. Thus, this part of his appeal is dismissed.
As a general principle, the legal doctrine of standing prevents a party from challenging the constitutionality of a statute that does not affect him. See People v. Malchow, 193 Ill.2d 413, 425, 250 Ill.Dec. 670, 739 N.E.2d 433 (2000) (standing ensures only those with real interest in outcome of controversy raise such issues); Chicago Teachers Union, Local v. Board of Education of the City of Chicago, 189 Ill.2d 200, 206, 244 Ill.Dec. 26, 724 N.E.2d *1157 914 (2000) (court will not analyze constitutionality of statutory provision which does not affect parties to cause at hand). The standing requirements for a statutory challenge under our federal constitution include an actual "case or controversy": the plaintiff must allege that he was personally injured by unlawful conduct fairly traceable to the defendant and request relief that will likely redress this injury. See Allen v. Wright, 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556, 569-70 (1984). Similarly, a statutory challenge under our state constitution requires the plaintiff to have sustained, or be in immediate danger of sustaining, a direct injury from the enforcement of the statute and that injury is (1) distinct and palpable; (2) fairly traceable to the defendant's actions; and (3) substantially likely to be redressed by granting the relief requested. See Glisson v. City of Marion, 188 Ill.2d 211, 221, 242 Ill.Dec. 79, 720 N.E.2d 1034 (1999).
There is nothing in the record to indicate that the minor was ever detained on his drug case. Police took him into custody on November 16, 1998, and the State, believing he should be detained further, filed a formal petition for adjudication of wardship the next day, all pursuant to the Juvenile Court Act. See 705 ILCS 405/5-501(1), (2), 5-520 (West 1998). An order for the minor's temporary detention is in the record, but it is incomplete: the minor's name is filled in under part one of the two-step detention analysis that indicates a finding of probable cause to believe he was delinquent (see 705 ILCS 405/5-501(1) (West 1998)), but the order is blank as to a finding of "immediate and urgent necessity" for detention (see 705 ILCS 405/5-501(2) (West 1998)). Moreover, the order was never signed or issued by any judge. Nothing in the record shows that a detention or shelter care hearing was even conducted on the drug case. Thus, the State's ability to proceed at such a hearing by way of proffer under section 5-501, which the minor challenges here, never materialized.
It is clear that the minor did not sustain a distinct injury in his drug case directly traceable to the enforcement of the proffer provision of section 5-501. He was not detained for this offense and, thus, the proffer provision was neither used against him nor even played a role. Striking this portion of section 5-501, the relief the minor seeks, will not provide any redress or remedy. Accordingly, the minor has no standing under either the federal or state constitution to challenge section 5-501 and thus, his appeal on the drug case is dismissed.

B. The Weapons Case
However, the minor does have standing to challenge section 5-501 in relation to his weapons case, as the juvenile court found, based on the State's proffer, both probable cause to declare him delinquent and an "immediate and urgent necessity" to detain him on these charges.
The minor asserts that the detention or shelter care hearing is equivalent to a preliminary hearing in an adult criminal case. Thus, he contends, section 5-501 must conform to article I, section 7, of our state constitution (Ill. Const. 1990, art. I, § 7) and the fourth and sixth amendments of the federal constitution (U.S. Const., amends. IV, VI) and we should analyze section 5-501 according to these provisions. We disagree.

1. Precedent Reveals Due Process Analysis
The minor's proposed method of analysis demonstrates a misunderstanding of both federal and state treatment of the juvenile system. A review of major juvenile cases relied upon by both federal and state courts establishes that the correct *1158 method of review does not comprise specific constitutional provisions but, rather, a generalized due process and fundamental fairness analysis.
In the 1960s, the Supreme Court found it necessary to examine the differences between the juvenile and adult systems. See generally Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966). At that time, it declared that juvenile proceedings were civil rather than criminal and were meant to guide and rehabilitate children, not treat them criminally or impose guilt and punishment. See Kent, 383 U.S. at 555, 86 S.Ct. at 1054, 16 L.Ed.2d at 94. Despite a concern that juveniles would not receive the same procedural protections afforded to adults, the Court firmly held that, based on the systems' differences, it would not extend those constitutional guarantees to juveniles. See Kent, 383 U.S. at 556, 86 S.Ct. at 1054-55,16 L.Ed.2d at 94.
However, it was not as if juveniles were not to be afforded any protections. To the contrary, over the next decades, the Court granted them several rights, including appropriate and timely notice, counsel, confrontation and cross-examination of witnesses (see In re Gault, 387 U.S. 1, 33, 87 S.Ct. 1428, 1446, 18 L.Ed.2d 527, 549 (1967)); the privilege against self-incrimination (see Gault, 387 U.S. at 42, 87 S.Ct. at 1451, 18 L.Ed.2d at 554; Gallegos v. Colorado, 370 U.S. 49, 55, 82 S.Ct. 1209, 1213, 8 L.Ed.2d 325, 329 (1962)); and the standard of proof beyond a reasonable doubt (see In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368, 375 (1970)). Yet, because the Court strongly believed that not "all rights constitutionally assured to an adult accused of crime also are to be enforced or made available to the juvenile in his delinquency proceeding" (emphasis in original), it decided that a method of analysis different from that used for adults was necessary when deciding what protections a juvenile should receive. McKeiver v. Pennsylvania, 403 U.S. 528, 533, 91 S.Ct. 1976, 1980, 29 L.Ed.2d 647, 654 (1971), relying on Kent, 383 U.S. at 562, 86 S.Ct. at 1057, 16 L.Ed.2d at 97-98 (juvenile delinquency hearing is not to conform to requirements of criminal trial or even administrative hearing; it need only "measure up to the essentials of due process and fair treatment"). The underlying rationale for the Court's decisions about juvenile rights was based, not on the specific constitutional amendments and provisions used in adult cases, but more and more on the concept of due process. See Kent, 383 U.S. at 557, 86 S.Ct. at 1055, 16 L.Ed.2d at 95 (reading juvenile statute at issue "in the context of constitutional principles relating to due process").
Today, it is this testwhether the juvenile provision in question violates the fundamental fairness aspects of due process that the Court has chosen to undertake in examining juvenile cases. See Middendorf v. Henry, 425 U.S. 25, 37 38, 96 S.Ct. 1281, 1289, 47 L.Ed.2d 556, 565-66 (1976) (constitutional challenge to juvenile system is to be reviewed under due process, not specific amendments, since "there are elements about [that system] which sufficiently distinguish it from a traditional * * * criminal trial"); McKeiver, 403 U.S. at 543, 91 S.Ct. at 1985, 29 L.Ed.2d at 659 ("the applicable due process standard in juvenile proceedings * * * is fundamental fairness"); Winship, 397 U.S. at 359, 90 S.Ct. at 1070, 25 L.Ed.2d at 372 (safeguards in juvenile cases arise from due process and fundamental fairness); Gault, 387 U.S. at 24, 87 S.Ct. at 1442,18 L.Ed.2d at 544 (Court is to use "application of due process requirements" in connection with juvenile delinquency cases).
*1159 The same is true for our state supreme court and our own district. After thorough review of the Juvenile Court Act, they too have found that juvenile proceedings are "distinct and different from a criminal prosecution"; juveniles are not adjudicated criminals nor do they suffer the same consequences as convicted adults. People v. Woodruff, 88 Ill.2d 10, 18 19, 58 Ill.Dec. 869, 430 N.E.2d 1120 (1981); see In re J.E., 282 Ill.App.3d 794, 799, 218 Ill.Dec. 220, 668 N.E.2d 1052 (1996) (juvenile detention hearings are limited in scope and transitory in nature, unlike adult proceedings). Moreover, our courts have consistently held that the unique underlying philosophy of the juvenile system merits retention of its differentiation from the adult criminal process. See In re W.C., 167 Ill.2d 307, 320, 212 Ill.Dec. 563, 657 N.E.2d 908 (1995); Woodruff, 88 Ill.2d at 19-20, 58 Ill.Dec. 869, 430 N.E.2d 1120; J.E., 282 Ill.App.3d at 799, 218 Ill.Dec. 220, 668 N.E.2d 1052. Our state supreme court has been careful to point out that neither general criminal practice rules nor provisions of the criminal code or criminal procedural code have been incorporated into the juvenile system. See W.C., 167 Ill.2d at 322, 212 Ill.Dec. 563, 657 N.E.2d 908; Woodruff, 88 Ill.2d at 15-16, 58 Ill. Dec. 869, 430 N.E.2d 1120. Thus, it has chosen, as has the United States Supreme Court, to adopt due process instead of specific state constitutional provisions to safeguard juvenile rights. See W.C., 167 Ill.2d at 320, 212 Ill.Dec. 563, 657 N.E.2d 908.
We do recognize that, with the implementation of Public Act 90-590, several aspects of the Illinois juvenile system have changed in recent years. Specifically, Public Act 90-590 modified article V of the Juvenile Court Act dealing with pretrial detention, including the statutory provisions the minor challenges here: section 5-501. See In re A.G., 195 Ill.2d 313, 317, 253 Ill.Dec. 911, 746 N.E.2d 732 (2001). Public Act 90-590 has created a "fundamental shift from the singular goal of rehabilitation to include the overriding concerns of protecting the public and holding juvenile offenders accountable for violations of the law." A.G., 195 Ill.2d at 317, 253 Ill.Dec. 911, 746 N.E.2d 732. Thus, it has become somewhat of a misnomer to label juvenile proceedings as "civil." However, even with this slight change in purpose, our supreme court still affirms that juvenile proceedings are not criminal in nature and should continue to be dissected from the adult criminal system. See A.G., 195 Ill.2d at 317, 253 Ill.Dec. 911, 746 N.E.2d 732.
Therefore, contrary to the minor's contentions here, examination of his constitutional challenges should be according to due process: is section 5-501, specifically that portion which allows the State to proceed by way of proffer against a juvenile during a detention or shelter care hearing, fundamentally unfair such that an adult preliminary hearing should be mandated in its place? We hold that it is not.
Under the juvenile system, the officer who takes the minor into custody must immediately try to notify the minor's parent or guardian. See 705 ILCS 405/5-401, 5-405(1), (2) (West 1998). The officer has discretion to either release the minor or present him before a juvenile court within 40 hours. See 705 ILCS 5/405(3), 5-415(1) (West 1998). If the State believes the minor should remain in custody, it must file a formal petition for adjudication of wardship. See 705 ILCS 405/5-415(2), 5-520 (West 1998). Then, a detention or shelter care hearing is held pursuant to section 5-501, and the juvenile court must conduct a two-step analysis in order to detain the minor before trial. First, it must decided whether there is probable *1160 cause to believe that the minor is delinquent. See 705 ILCS 405/5-501(1) (West 1998). If yes, the court must then find that detaining the minor comprises an "immediate and urgent necessity." 705 ILCS 405/5-501(2) (West 1998). If not, the minor is released from custody. See 705 ILCS 405/5-501(2) (West 1998).
Contrary to the minor's assertions, section 5-501 is replete with protections specifically designed for juveniles according to their distinctive legal system. The section directs the juvenile court to "receive all relevant information and evidence" by relaxing the formal rules of evidence used in adult proceedings. 705 ILCS 405/5-501 (West 1998) ("[a]ll evidence shall be admissible if it is relevant and reliable regardless of whether it would be admissible under the rules of evidence applicable at a trial"). It also gives the minor a right to counsel for this hearing. While it is true that, as the minor here attacks, the State may present viable evidence by way of a proffer which the court can use in its findings, section 5-501 allows the minor to do the same. This section further ensures that the proffer must be based on reliable information. Nowhere in this section does it mandate that the State proceed in this manner or, more significantly, that the court must accept the proffer; it is for the court to decide whether to believe the evidence presented pursuant to this method.
Further protections exist in that the court is forced to complete a two-part analysis. In addition to probable cause, section 5-501 outlines factors that the court is to use in determining" immediate and urgent necessity." See 705 ILCS 405/5-501(2) (West 1998). Also, this section permits any party, even the minor himself, to file a motion to vacate a detention or shelter care order on several grounds. See 705 ILCS 405/5-501(7) (West 1998).
When studying section 5-501 within the context of the juvenile justice system retaining its informal, nonadversarial nature and main goal to rehabilitate, not punishit is clear that this section complies with due process. The "proffer based on reliable information" allows both sides, not just the State, to present to the juvenile court in a short amount of time all relevant evidence regarding the juvenile and the situation at hand. This is necessary if the court is to fulfill its traditional role as parens patriae in juvenile cases and maintain their transitory and flexible nature. The safeguard is clearly present: the court must deem the proffer reliable. That is, if either party can demonstrate that it is unreliable, the court may simply decline to accept the proffer in its discretion without incident. Moreover, section 5-501 does not insist that a proffer must be used to the exclusion of all other evidence. To the contrary, that section permits both the State and the juvenile to present other forms of evidence, including live witness testimony and examination, if they are so able.
The minor's call for an adult-like preliminary hearing would strike a blow to the juvenile system. It would turn this system into an adversarial one, which, as noted above, was and is exactly what our legislators attempted to avoid in creating it. So too would be sacrificed speed, efficiency, informality and flexibility, the system's main tenets. See Winship, 397 U.S. at 366, 90 S.Ct. at 1074, 25 L.Ed.2d at 376-77. As it stands, section 5-501 remains critically unlike an adult preliminary hearing and we will not change it here. From it, a juvenile reaps several benefits, including the ability to have his hearing reconsidered and his detention order modified or vacated if facts change. See Woodruff, 88 Ill.2d at 19, 58 Ill.Dec. 869, 430 N.E.2d 1120 ("the minor enjoys certain protections *1161 and benefits under the Juvenile Court Act that are not extended to one charged with a crime"). Simply superimposing an adult-style preliminary hearing, as the minor requests us to do, will only upset the substantive benefits he already receives under the juvenile system.
Because we find that section 5-501 is fundamentally fair and does not violate the minor's due process rights, we dismiss his appeal.

2. The Minor's Constitutional Challenges
We briefly address the minor's three constitutional challenges to further emphasize that due process governs our examination here.

a. Article 1, Section 7, of the Illinois Constitution
The minor asserts that he deserves the same constitutional protections granted to adults under article I, section 7, of the Illinois Constitution, namely, a preliminary hearing to determine probable cause. Article I, section 7, states:
"No person shall be held to answer for a crime punishable by death or by imprisonment in the penitentiary unless either the initial charge has been brought by indictment of a grand jury or the person has been given a prompt preliminary hearing to establish probable cause." Ill. Const., art. I, § 7.
Reviewing this section shows many flaws in the minor's argument and reveals that it is inappropriate in our analysis of the constitutionality of section 5-501. First, it is obvious that the framers of our constitution did not envision applying this part of the constitution to juveniles. It refers to crimes punishable by death, to which juveniles never have been, nor currently are, subjected. Second, article I, section 7, does not, as the minor argues, "guarantee" adults a preliminary hearing with the opportunity to test the sufficiency of the charges or cross-examine witnesses; probable cause may just as easily be determined through a grand jury indictment. See People v. Franklin, 80 Ill.App.3d 128, 131, 35 Ill.Dec. 121, 398 N.E.2d 1071 (1979).
Thus, the minor demands that juveniles must be constitutionally afforded a "right" that not even adult criminals receive under article I, section 7. He neglects that, as demonstrated above, juveniles do receive adequate determinations of probable cause under section 5-501 of the Act; that section mandates such a finding in a detention or shelter care hearing before a juvenile may be detained. Because the adult and juvenile systems operate as such different mechanisms here, it is not feasible to simply superimpose article I, section 7's adult protections on juveniles.
The minor relies on In re W.C. for his challenge of section 5-501 under the Illinois Constitution. While that case is factually similar in that a juvenile was adjudicated delinquent, it severely departs from the minor's contentions. Our supreme court clearly denominated juvenile proceedings to be "not criminal" and "nonadversarial." W.C., 167 Ill.2d at 320, 326, 212 Ill.Dec. 563, 657 N.E.2d 908. Moreover, the court did not use an article I, section 7, approach to determine whether rules regarding written posttrial motions applicable to adults in criminal proceedings also applied to juveniles. Rather, because it recognized the essential differences between the adult and juvenile systems, it employed a due process/fundamental fairness analysis instead. See W.C., 167 Ill.2d at 320-324, 212 Ill.Dec. 563, 657 N.E.2d 908.
Therefore, article I, section 7, of our state constitution does not apply to the minor's challenges to section 5-501 and its effects on the juvenile system.

*1162 b. The Sixth Amendment of the United States Constitution
The minor next contends that the sixth amendment's "critical stage" analysis should be employed, and, because section 5-501 allows the State to proceed by proffer in the detention or shelter care hearing, it deprives juveniles of effective assistance of counsel in violation of this amendment.
However, again, the minor's constitutional challenge is inapplicable because the sixth amendment does not govern juvenile cases. That amendment grants assistance of counsel "[i]n all criminal prosecutions" at those critical stages that greatly impact an accused's liberty. U.S. Const., amend. VI; see generally Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970). Our Supreme Court has addressed whether juvenile proceedings may be classified as "criminal prosecutions" for purposes of a potential sixth amendment analysis, and has, time and again, specifically found that that they may not. See Middendorf, 425 U.S. at 38, 96 S.Ct. at 1289, 47 L.Ed.2d at 566 (juvenile proceeding, even though it "may result in deprivation of liberty[,] is nonetheless not a `criminal proceeding' within the meaning of the Sixth Amendment"); McKeiver, 403 U.S. at 541, 91 S.Ct. at 1984, 29 L.Ed.2d at 658 (juvenile court proceedings have "not yet been held to be a `criminal prosecution,' within the meaning and reach of the sixth amendment"). In addition, the Supreme Court has found that even adult probable cause proceedings do not amount to a "critical stage" that would employ Sixth Amendment examination. See Gerstein v. Pugh, 420 U.S. 103, 122, 95 S.Ct. 854, 867, 43 L.Ed.2d 54, 70 (1975).
Therefore, the minor's proposed Sixth Amendment constitutional challenge to section 5-501 is misplaced.

c. The Fourth Amendment of the United States Constitution
Finally, the minor maintains that section 5-501 violates the fourth amendment in that it allows the juvenile court to make a probable cause determination based solely on a proffer which does not require an oath or affirmation.
The minor's contentions here are incorrect for several reasons. First, he relies on the warrant clause of the fourth amendment, which is inapplicable to the instant case. That portion states: "no Warrants shall issue but upon probable cause, supported by Oath or affirmation, and particularly describing the placed to be searched, and the persons or things to be seized." U.S. Const., amend. IV. What is to be "supported by Oath or affirmation" is not a proffer, as the minor claims, but rather a warrant. Because the instant case did not involve a warrant, the minor's argument is inapplicable.
Were we to address the minor's constitutional claim here, however, we would conclude that it must fail. Our Supreme Court has clearly delineated what the fourth amendment requires in order to detain someone: simply, "a judicial determination of probable cause." Gerstein, 420 U.S. at 114, 95 S.Ct. at 863, 43 L.Ed.2d at 65. This does not require those protections found in adversarial proceedings, such as right to counsel, confrontation, or cross examination of witnesses. See Gerstein, 420 U.S. at 119, 95 S.Ct. at 866, 43 L.Ed.2d at 68. In fact, the United States Supreme Court has approved the determination of probable cause by a magistrate, without an adversarial hearing, and even based solely on hearsay and written testimony. See Gerstein, 420 U.S. at 120, 95 S.Ct. at 866, 43 L.Ed.2d at 69. As long as the procedure used, whatever it may be, is a "fair and reliable determination of *1163 probable cause * * * made by a judicial officer either before or promptly after arrest," a viable basis has been established for pretrial restraint. Gerstein, 420 U.S. at 125, 95 S.Ct. at 868-69, 43 L.Ed.2d at 71-72.
Section 5-501 of the Act clearly comports with these fourth amendment requirements. The first part of the detention or shelter care hearing requires the juvenile court to find probable cause in order to detain a juvenile. See 705 ILCS 405/5-501(1) (West 1998). This determination must occur promptly after the juvenile is taken into custody, i.e., within 40 hours, and if the court does not find probable cause, it must release him. See 705 ILCS 405/5-415(1), 5-501(1) (West 1998). Juvenile proceedings are not adversarial. However, under the mandates of our Supreme Court, this does not violate the fourth amendment. As we have just noted, in the adult criminal system, probable cause for detention may be determined through a nonadversarial hearing and based on even hearsay or written testimony, not live witnesses, as long as that determinations is fair and reliable. This is satisfied under section 5-501: during the analysis for probable cause, the State may present, and the court may accept, evidence "by way of proffer," as long as it is "based on reliable information." 705 ILCS 405/5-501 (West 1998).
In the instant case, the State presented its evidence on the weapons case against the minor by way of proffer. This comprised the testimony of Officer Davis, as well as his corroborating police report, signed by two other officers (who were present when the weapon was recovered from the minor) and affirmed by their sergeant. After reviewing this information and finding it reliable, the court accepted the proffer. We find no reason to declare the proffer, or the information it was based upon, to be unreliable.
Therefore, even if probable cause concerns do play a role here, section 5-501 clearly satisfies the requirements of the fourth amendment and is in no way unconstitutional in this regard.

CONCLUSION
Because the minor has not met his burden in establishing the invalidity of section 5-501 of the Act under either our state or federal constitution, we affirm the juvenile court's adjudication and disposition of his delinquency.
Accordingly, the judgment of the circuit court of Cook County is affirmed.
Affirmed.
GALLAGHER, P.J., and SHEILA M. O'BRIEN, J., concur.